UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                  Criminal No. 09-254 JNE/AJB

           Plaintiff,

v.                                          **REPORT AND RECOMMENDATION**

(1)    Manuel Antonio Sotelo,
(2)    Guillermo Perez-Chavez,
(3)    Luis Alfonso Perez-Robles,
(4)    Valerio Luis Hernandez-Quiroz,
(5)    Juan Roberto Castaneda-Diaz,

           Defendants.

    Thomas M. Hollenhorst, Esq., Assistant United States Attorney, for the plaintiff,
       United States of America;
    Bruce D. Nestor, Esq., for defendant Manuel Antonio Sotelo;
    David Izek, Esq., for defendant Guillermo Perez-Chavez;
    Wayne G. Nelson, Esq., for defendant Luis Alfonso Perez-Robles;
    Steve L. Bergeson, Esq., for defendant Valerio Luis Hernandez-Quiroz; and
    Philip G. Leavenworth, Esq., for defendant Juan Roberto Castaneda-Diaz.

This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on November 6, 2009, at the U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101. The Court issued an Order on Motions dated November 10, 2009, reserving defendants' various motions to suppress statements, motions for severance, motions for suppression of search and seizure evidence, motions for suppression of identifications, and motion for dismissal for submission to the district court on report and recommendation.

Based upon the file and documents contained therein, along with witness testimony, exhibits, and memorandums of counsel, the magistrate judge makes the following:

**Findings**

On August 19, 2009, a confidential informant ("CI" or "informant") met with defendant Guillermo Perez-Chavez to discuss the informant's purchase of cocaine. The informant had previously purchased drugs from Perez-Chavez in controlled buys and during those transactions had discussed larger quantity purchases. Defendant Juan Roberto Castaneda-Diaz had also been present at prior drug transactions as a driver for Perez-Chavez. On August 19, 2009, the CI was to first meet Castaneda-Diaz and thereafter be taken to Perez-Chavez, who would then take the CI to an apartment to examine a kilo of cocaine. Law enforcement officers conducted surveillance of the meetings and observed Perez-Chavez in a Jeep driven by Castaneda-Diaz, with the CI following in a separate vehicle. DEA Special Agent Terrence Olstad was present at the scene in a vehicle and he watched with binoculars from approximately one-half block away. The CI and Perez-Chavez were observed going into the apartment building shortly after 7:00 p.m. They remained in the apartment for five-to-ten minutes before returning to their respective vehicles and departing. Meanwhile, Castaneda-Diaz had remained outside the building, standing in the area of the Jeep, and behaving in the manner of a lookout engaged in counter surveillance, until Perez-Chavez returned. Three other individuals were seen coming from the apartment approximately 30 seconds after the CI and Perez-Chavez came out.

The CI subsequently reported that there were three other individuals in the apartment besides himself and Perez-Chavez. Also, the CI was wearing a recording device. Two of the individuals in the apartment were co-defendants Luis Alfonso Perez-Robles and Valerio Luis Hernandez-Quiroz. The third person remains unidentified. While in the apartment, the CI was shown a kilo of cocaine, and he also observed firearms in the residence, specifically,

2

an AK-47 in the corner and a handgun in the waistband of the unidentified man who remained seated on a couch. No transaction was conducted at that time, but a purchase was scheduled for a later time.

**Search Warrants**

**State Warrant.** On the evening of August 19, 2009, after the above-described apartment meeting had taken place, Ramsey County District Court Judge Judith Tilsen issued a warrant to search the unit, a particularly described location in St. Paul, Minnesota (Hrg. Ex. 1). The search warrant identified the objects of the warrant as cocaine and other drugs; mail and papers indicating occupancy or ownership; money, valuables, and financial documents; drug paraphernalia; photos; guns and other weapons; and safes or lock boxes. The warrant was issued on the basis of probable cause contained in the Affidavit of St. Paul Police Officer Mike Meyer, including confidential reliable informant and surveillance information. The warrant was executed at approximately 6:20 a.m. on August 20, 2009, with the participation of a SWAT team, and evidence was seized pursuant to the warrant, including cocaine, marijuana, heroin, methamphetamine, and a firearm. Defendant Valerio Luis Hernandez-Quiroz was found alone in the apartment and was arrested and detained.

**Federal Warrants.** On August 19, 2009, five separate federal warrants were issued by United States Magistrate Judge Jeanne J. Graham, authorizing the searches of: (1) a particularly described residence in Brooklyn Center, Minnesota, with attached garage (Hrg. Ex. 2); (2) a particularly described residence in St. Paul, Minnesota, and detached garage (Hrg. Ex. 6); (3) a specifically identified Mazda vehicle (Hrg. Ex. 5); (4) a specifically identified Ford Expedition (Hrg. Ex. 3); and (5) a specifically identified Chevrolet van (Hrg. Ex. 4). Each of the

warrants identified the objects of the warrant as cocaine and any illegal contraband and drugs; records and papers relating to drug transportation and distribution; financial statements and records; electronic equipment and devices; money and valuables; photos; drug paraphernalia; evidence of occupancy; firearms and other weapons; and locked containers.  The five warrants were all issued on the basis of probable cause contained in the essentially identical Affidavits of DEA Special Agent Sean Harris, including multiple controlled drug buys, confidential reliable informant reports, and police surveillance information.

**Vehicle Stop**

Prior to execution of the state search warrant on the morning of August 20, 2009, officers maintained surveillance on the apartment.  At approximately 6:00 a.m. on August 20, 2009, a person was observed leaving the apartment, walking down the block, and leaving in a Jeep vehicle.  The vehicle was followed and a traffic stop was subsequently conducted.  The Jeep was driven by defendant Perez-Robles, who was arrested at the direction of DEA Special Agent Terrence Olstad.  Although Mr. Perez-Robles' name was not previously known to officers, his physical description was consistent with the CI's description of one of the men seen in the apartment the previous day and also observed by surveillance officers coming out of the apartment building on August 19, 2009.  A cell phone was seized and searched in connection with the traffic stop.

**Rainbow Foods Arrests and Statements**

On August 21, 2009, defendant Perez-Chavez contacted the CI and indicated that there had been trouble, and the apartment that had been searched pursuant to the state warrant, but that a drug deal could still be accomplished if the CI remained interested.  Special Agent

Olstad directed the CI to continue negotiations and recorded calls were made in which a meeting at a St. Paul Rainbow Foods store was arranged. Surveillance by law enforcement was set up at the Rainbow Food store. Perez-Chavez arrived at the store in a Jeep driven by defendant Castanada-Diaz, and both defendants were promptly stopped and detained upon their arrival in the parking lot. Perez-Chavez and Castaneda-Diaz were both taken into custody, placed into separate squad cars, and moved to another parking lot across the street (Pl. Hrg. Ex. 10, 11, and 12) where they were kept apart. Mr. Castaneda-Diaz was given the Miranda warning after the move, and he made statements to officers. The statements by Castaneda-Diaz were given within 30 minutes after the initial stop and were obtained after inculpatory information regarding Castaneda-Diaz had been provided by Perez-Chavez.

**Perez-Chavez Statement.** Approximately five minutes after defendant Guillermo Perez-Chavez had been arrested and moved across the street, at about 5:00 p.m. on August 21, 2009, ICE Special Agent Travis Hamblen met with Mr. Perez-Chavez in the back of a police squad car. The defendant had been handcuffed behind his back, but the handcuffs were removed or changed to the front during the ensuing interview. Special Agent Hamblen advised the defendant of his Miranda rights in Spanish from a preprinted card (Hrg. Ex. 9). Hamblen speaks conversational Spanish and spoke primarily Spanish for six years while working as a border patrol agent in southern Arizona. Mr. Perez-Chavez fully understood the Miranda warning as given to him, and he expressly stated that he both understood his rights and that he waived those rights and would speak with the officer. During interviewing the defendant did not request the assistance of an attorney; he did not assert any reluctance to continue with the interview; and he did indicate any misunderstanding with respect to language issues or the nature

5

of the questions, though the defendant was asked to speak slower on a couple of occasions. Defendant Perez-Chavez was not under the influence of drugs or alcohol and did not appear to be experiencing effects from lack of sleep. No offer of leniency in exchange for cooperation was made and no threats of punishment for refusing to cooperate were made. During the initial 15 to 20 minutes of the interview, Mr. Perez-Chavez made incriminating statements, including statements implicating defendant Castaneda-Diaz in drug transactions. Special Agent Hamblen spoke with defendant Castaneda-Diaz after having received the implicating statements from Perez-Chavez.

**Photo Lineups**

Special Agent Olstad prepared a series of photo lineups for purposes of obtaining identifications of defendants in this matter. The photos in each of the six-person arrays were randomly chosen from arrest photos in the federal system. By use of a computer program, photos are selected on the basis of age range, ethnicity, height, weight, and other physical characteristics shared by the subject defendant. A photo list is then produced and Special Agent Olstad selected pictures from the list for inclusion in the lineup.

Five separate and different lineups were shown to the cooperating informant on September 4, 2009 (Hrg. Ex. 7). The first lineup contained a photo of defendant Castaneda-Diaz in the upper left corner, but the witness made no identification. The second lineup contained a photo of defendant Hernandez-Quiroz in the lower left corner, and the informant promptly identified the person as someone who had been in the apartment, and had done much of the talking, on August 19, 2009. The third lineup contained a photo of defendant Perez-Robles in the upper right corner, and the informant promptly identified him as the person who displayed a

kilo of cocaine at the apartment. The fourth lineup contained a photo of defendant Sotelo in the lower right corner, and the informant identified the photo as a person who had sold drugs to him. The fifth lineup contained a photo of defendant Perez-Chavez in the bottom center, and the informant immediately identified him as the man who had taken him to the apartment on August 19, 2009. Before presenting the photo arrays, Special Agent Olstad advised the informant that there may or may not be recognizable pictures in the lineups.

Four separate and different photo lineups and a single photo (Hrg. Ex. 8) were shown to defendant Perez-Chavez on September 1, 2009, after his arrest. The first lineup contained a photo of defendant Perez-Robles in the upper right corner, and Perez-Chavez promptly identified the person as being in the apartment on August 19, 2009. The second lineup contained a photo of defendant Hernandez-Quiroz in the lower left corner, and Perez-Chavez immediately identified the person by a nickname. The third lineup contained a photo of defendant Castaneda-Diaz in the upper left corner, and Perez-Chavez identified the person as his boss at an auto body shop. The fourth lineup contained a photo of defendant Sotelo in the lower right corner, and Perez-Chavez identified him as a friend to whom he had sold drugs. Mr. Perez-Chavez was also shown a single photo of a person he identified as "Beto," a cocaine supplier.

**Deported Witnesses**

One of the residences that was searched pursuant to a federal warrant (Hrg. Ex. 2) executed on August 19, 2009, was the residence of defendant Manuel Antonio Sotelo. Earlier in the investigation the CI had met with Sotelo at the home and they had gone into the basement to discuss drug deals. At that time Mr. Sotelo instructed an unidentified person to go to another part of the house to retrieve a kilo of cocaine and a large amount of marijuana. When the

7

residence warrant was executed on August 24, 2009, four people were present in the house, including defendant Sotelo and his wife. It was ultimately determined that the other two individuals were in the country illegally, and they were detained and deported to Mexico on September 2, 2009. Those persons were interviewed at the home at the time of the search and provided statements that were contained in a police report. They were initially told that they were not arrested and were told that they were not required to speak with officers. Both acknowledged living at the location for a few months, but denied involvement in drug dealing or knowledge of drugs in the house. No significant amount of marijuana or cocaine was found at the residence in the search, though a small amount of methamphetamine was later discovered. The unnamed aliens were subsequently arrested and detained at the Hennepin County Jail for possession of methamphetamine. Their deportation was not at the request of investigators involved in the present case.

Based upon the foregoing Findings, the Court makes the following:

**Conclusions of Law**

**Severance.** Pretrial severance of counts and defendants is not required in this case. Defendants (1) Manuel Antonio Sotelo, (2) Guillermo Perez-Chavez, (3) Luis Alfonso Perez-Robles, (4) Valerio Luis Hernandez-Quiroz, and (5) Juan Roberto Castaneda-Diaz, have each moved for severance of defendants for separate trials and/or severance of counts. [Docket Nos. 28, 42, 43, 54, 58, 75, 89, 93, and 96]. Defendants have variously asserted improper joinder, jury difficulty in distinguishing the alleged acts of each defendant, possible introduction of evidence that would be inadmissible against certain defendants in a separate trial or inability to present evidence that would otherwise be admissible in a separate trial, and possible violation

of protections against self-incrimination.  Only defendant Manuel Antonio Sotelo has offered post-hearing argument in support of his motion.  Defendants have not shown that severance of defendants for purposes of trial is necessary to avoid risk of compromising any specific trial right to which each of them is entitled or is necessary to prevent the jury from making a reliable judgment as to the guilt or innocence of each of them.  Defendants' motions for severance of counts and defendants should be denied.

Two or more defendants may be charged in the same indictment if they are alleged to have participated in the same transaction or series of incidents constituting an offense or offenses. Fed. R. Crim. P. 8(b).  There is a preference in the federal system for joint trials of defendants who are indicted together. Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 937 (1993).   Persons charged with conspiracy should generally be tried together and it will rarely be improper for co-conspirators to be tried together. United States v. Kindle, 925 F.2d 272, 277 (8th Cir. 1991); United States v. Stephenson, 924 F.2d 753, 761 (8th Cir. 1991), cert. denied 502 U.S. 813 (1991).  The co-defendants in this matter have been indicted for conspiring with one another to distribute cocaine.  Under these circumstances, the general rule in the Federal system is that the co-conspirators should be tried together.  The court may grant a severance of defendants if it appears that a defendant is prejudiced by a joinder of defendants at trial. Fed. R. Crim. P. 14.  A court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 113 S.Ct. at 938.

Defendant Sotelo seeks severance from other defendants with respect to the Count 1 conspiracy charge, and he further moves for severance of Counts 6, 7, and 8 on prejudice

grounds where Sotelo is not named in those counts; there is an absence of evidence connecting him to defendants named in those counts or the location(s) of the offenses; and references at trial to firearms and other drugs as evidence relating to those counts would be prejudicial to Mr. Sotelo. In opposition to severance the government asserts that defendant Perez-Chavez represents an continuous thread that connects all the defendants and all the counts in this case. The United States also contends that defendant Sotelo was a person associated with Mr. Perez-Chavez in several instances of drug sales and was an active participant in conspiracy regardless of the level of association with other conspirators. The government's argument is persuasive.

The indictment sufficiently delineates the charges and identifies those defendants charged with each offense. Based upon the indictment and evidence produced at hearing the court concludes that the roles of the defendants are sufficiently distinct and identifiable that a jury, with the aid of instructions, will be able to distinguish the roles of various defendants with respect to the separate counts and will be able to properly compartmentalize the evidence relating to each defendant and to each count. U.S. v. O'Connell, 841 F.2d 1408, 1432 (8th Cir. 1987). With respect to severance for separate trials on the conspiracy charge, evidence of common connection between the alleged conspirators, i.e. defendant Perez-Chavez, is sufficient to support the charge. Moreover, defendants offer no compelling basis for a determination that one defendant is unduly prejudiced by joinder with the other defendants in this case to the extent necessary to overcome the preference for joinder of defendants in conspiracy cases. The court concludes that the defendants and counts were not improperly joined in the indictment and severance of counts or defendants for separate trials is not required.

**Search Warrants**

        **St. Paul Apartment.** Evidence seized pursuant to a warrant to search a particularly described apartment location in St. Paul, Minnesota (Hrg. Ex. 1), was not unlawfully obtained in violation of the constitutional rights of any defendant in this action. The apartment search warrant was issued on August 19, 2009, and was based upon sufficient probable cause as stated in the Affidavit of St. Paul Police Officer Mike Meyer and as determined by Ramsey County District Court Judge Judith Tilsen. The warrant properly and sufficiently identified the location of the search and the items to be seized. The search warrant was lawfully issued and there is no requirement for suppression of evidence on grounds that the warrant was unlawfully issued. Specifically, the court concludes that the warrant application/affidavit sufficiently established the credibility of a confidential reliable informant ("CRI") by reference to the affiant's substantial recent experiences with the CRI involving drug purchases, and the CRI having provided consistently accurate information leading to several arrests and seizures of drugs and money.

        **Federal Warrants.** Evidence seized pursuant to five separate federal warrants authorizing the searches of: (1) a particularly described residence in Brooklyn Center, Minnesota, with attached garage (Hrg. Ex. 2); (2) a particularly described residence in St. Paul, Minnesota, and detached garage (Hrg. Ex. 6); (3) a specifically identified Mazda vehicle (Hrg. Ex. 5); (4) a specifically identified Ford Expedition (Hrg. Ex. 3); and (5) a specifically identified Chevrolet van (Hrg. Ex. 4), was not unlawfully obtained in violation of the constitutional rights of any defendant in this action. Each of the residence and vehicle warrants was issued on August 19, 2009, and was based upon sufficient probable cause as stated in an Affidavit of DEA Special

Agent Sean Harris, and as determined by United States Magistrate Judge Jeanne J. Graham.  The warrants properly and sufficiently identified the location of the respective searches and the items to be seized.  The search warrant were lawfully issued and there is no requirement for suppression of evidence obtained pursuant to any of the five warrants on grounds that a particular warrant was unlawfully issued.

**Lineup Identifications**

None of the photographic spreads containing a picture of defendant  Luis Alfonso Perez-Robles, defendant Valerio Luis Hernandez-Quiroz, or any other defendant named in this action, was impermissibly suggestive with respect to the pictures included in the lineup or the manner in which the lineup photos were arranged.  The five arrays presented to a cooperating informant on September 4, 2009 (Hrg. Ex. 7), and the four separate photo lineups that were shown to defendant Perez-Chavez on September 1, 2009 (Hrg. Ex. 8), each consisted of photos of persons having similar physical characteristics.  The lineups themselves did not create a substantial likelihood of irreparable misidentification, and there is no expressed challenge presented with respect to methods in which the photo spreads were presented to witnesses. United States v. Johnson, 56 F.3d 947, 954 (8th Cir. 1995).   Under the totality of circumstances that have been brought to the court's attention, there was no substantial likelihood of misidentification with respect to each of the photo lineups in this case, and no eyewitness identifications should be suppressed on the basis of an improper photo array.

**Dismissal for Deportation**

Dismissal of indictment charges against defendant Manuel Antonio Sotelo on grounds that two possible witnesses in this matter were deported, and therefore unavailable to

the defendant, is not required. Defendant has made no plausible showing that the two individuals who were present in his residence at the time that a search warrant was executed were deported at the direction of investigating authorities in this case or that the individuals had information that was both material and favorable to defendant Sotelo. See United States v. Valenzuela-Bernal, 458 U.S. 858, 102 S.Ct. 3440 (1982). In addition, the defendant was detained pursuant to complaint issued on August 25, 2009, after execution of the search warrant on August 24, 2009, and he therefore had opportunity to advise counsel of the existence of such witnesses prior to their deportation on September 2, 2009. Nonetheless, at trial the government shall stipulate to the content of statements made to law enforcement by the deported individuals.[1] The defendant is not entitled to an adverse inference instruction regarding the presumed content of testimony that may have been given by the individuals, and there is no grounds on which to bar testimony regarding the CI's observations at the residence on April 8, 2009, based upon the deportation of possible witnesses. Id.

**Arrests and Statements**

Suppression of statements by defendant Juan Roberto Castaneda-Diaz in the vicinity of the Rainbow Foods store on August 21, 2009, on grounds that the statements were the fruit of an unlawful arrest, is not required. Officers had probable cause to believe that Castenada-Diaz was engaged in criminal drug activity and was therefore subject to immediate arrest and detention. The court concludes that the defendant was effectively under arrest and in custody as a result of his being secured, pat searched, placed in a squad car, moved to a different

---

[1] DEA Special Agent Olstad generally testified at the suppression hearing that "both of them basically said they didn't know anything about any drug dealing. They didn't know there was any drugs in the house or anything like that." (Hrg. Tr. 73).

location, and given the Miranda warning.  The court further concludes that the arrest was based upon probable cause under circumstances in which the defendant had previously been observed behaving in the nature of a lookout outside of apartment building in which drug activity involving his passenger was known to have very recently occurred, and the defendant was presently in the company of the same passenger who was known to be involved in a planned drug transaction with a CI at the time of the arrest.

The defendant insists that officers did not have probable cause to arrest him.  The court acknowledges that the initial observation of Mr. Castaneda-Diaz outside the apartment, standing alone, could not be immediately and effectively recognized as counter-surveillance. See United States v. Weaver, 966 F.2d 391, 394 (8th Cir. 1992)("Conduct typical of a broad category of innocent people provides a weak basis for suspicion."(citations omitted)).  In addition, probable cause to arrest is typically not established by mere association with a known drug dealer or presence in the same automobile.  United States v. Everroad, 704 F.2d 403, 406-06.  Nonetheless, the defendant's appearance with Mr. Perez-Chavez at the Rainbow Foods store in connection with a proposed drug transaction allows the prior activity to be evaluated in light of such subsequent circumstances and to be characterized as counter-surveillance.  Furthermore, the earlier observation of Castaneda-Diaz as a driver and an associate of the known drug dealer, prior to the time of the arrest and not merely as a one-time occurrence, distinguishes this case from the Everroad situation.  United States v. Brewer, 2009 WL 197995, *4 (N.D. Iowa, January 24, 2009)(not reported).  The totality of circumstances such that defendant Castaneda-Diaz was first observed in association with a known drug dealer, apparently serving as a lookout, and was later found in the company of the same drug dealer at a location at which a drug transaction or

negotiation was scheduled, is sufficient to constitute probable cause for the arrest. In any event, the totality of circumstances justified reasonable suspicion by officers that Castaneda-Diaz was involved in drug selling activity, and the lapse of less-than-30-minutes during which officer's obtained additional inculpatory statements from co-defendant Perez-Chavez, and thereby establishing probable cause for Castaneda-Diaz's arrest, did not entail delay that was unnecessary to the legitimate investigation by officers. See United States v. Bloomfield, 40 F.3d 910, 916-917 (8th Cir. 1994)(citations omitted).

**Perez-Roblez Arrest**

Officers had sufficient evidence to constitute probable cause for defendant Perez-Roblez's arrest for drug offenses. Suppression of physical evidence and/or statements obtained as a result of the arrest is not required. Probable cause to believe defendant had committed a criminal offense was established by the defendant's display of a significant quantity of a substance represented to be cocaine to a CI who further provided a description of the defendant that was consistent with the description of a person seen by officers on two occasions while observing the apartment location at which the drugs had been shown. The CI's information was sufficient in itself to establish probable cause under circumstances in which the CI's reliability was reinforced by his first-hand observation of drugs and guns, the CI's full description of events inside the apartment, and the CI's participation in successful drug buys. In any event, the CI's information was further corroborated as a result of surveillance observations consistent with the CI's reports regarding the number and descriptions of persons in the apartment. United States v. Granados, 587 F.Supp.2d 1112, 1118 (D.S.D. 2008)(citing United States v. Leppert, 408 F.3d 1039, 1042 (8th Cir. 2005)).

Based upon the foregoing Findings and Conclusions of Law, the Magistrate Judge makes the following:

## RECOMMENDATION

1.  Defendant Guillermo Perez-Chavez's Motion for Severance of Counts and Defendants be **denied** [Docket No. 28].

2.  Defendant Guillermo Perez-Chavez's Motion to Suppress Confessions or Statements in the Nature of Confessions be **denied** [Docket No. 33].

3.  Defendant Guillermo Perez-Chavez's Motion to Suppress any Evidence Obtained through Search and Seizure be **denied** [Docket No. 35].

4.  Defendant Guillermo Perez-Chavez's Motion for Severance of Counts and Defendants be **denied** [Docket No. 54].

5.  Defendant Valerio Luis Hernandez-Quiroz's Motion for Severance of Counts be **denied** [Docket No. 42].

6.  Defendant Valerio Luis Hernandez-Quiroz's Motion for Severance of Defendants be **denied** [Docket No. 43].

7.  Defendant Valerio Luis Hernandez-Quiroz's Motion for Suppression of Evidence Obtained as a Result of Search and Seizure be **denied** [Docket No. 44].

8.  Defendant Valerio Luis Hernandez-Quiroz's Motion to Suppress Statements, Admissions, and Answers of Defendant be **denied** [Docket No. 48]. His <u>Miranda</u> interview statements are not directly challenged and were not the fruit of unlawful police action.

9.  Defendant Luis Valerio Luis Hernandez-Quiroz's Motion to Suppress Out-of-Court Identification be **denied** [Docket No. 105].

10. Defendant Juan Roberto Castaneda-Diaz's Motion for Severance of Counts and Defendants be **denied** [Docket No. 58].

11. Defendant Juan Roberto Castaneda-Diaz's Motion for Suppression of Evidence Obtained as a Result of Search and Seizure be **denied** [Docket No. 59].

12. Defendant Juan Roberto Castaneda-Diaz's Motion to Suppress Statements, Admissions, and Answers of Defendant be **denied** [Docket No. 64].  His Miranda statements are not directly contested and were not the fruit of an unlawful arrest.

13. Defendant Manuel Antonio Sotelo's Motion to Dismiss-Loss of Witnesses be **denied** [Docket No. 74].

14. Defendant Manuel Antonio Sotelo's Motion for Severance of Counts and Defendants be **denied** [Docket No. 75].

15. Defendant Manuel Antonio Sotelo's Motion to Suppress-Search and Seizure be **denied** [Docket No. 78].

16. Defendant Manuel Antonio Sotelo's Motion for Severance of Defendants be **denied** [Docket No. 96].

17. Defendant Luis Alfonso Perez-Robles' Motion for Suppression of Statements be **denied** [Docket No. 83].  His statements were not the fruit of an unlawful arrest or police action.

18. Defendant Luis Alfonso Perez-Robles' Motion for Suppression of all Evidence Obtained pursuant to the Execution of a Search Warrant be **denied** [Docket No. 88].

19. Defendant Luis Alfonso Perez-Robles' Motion for Severance of Counts and Defendants be **denied** [Docket No. 89].

20.  Defendant Luis Alfonso Perez-Robles' Motion for Suppression of Evidence [Obtained] as a Result of Illegal Arrest and Seizure be **denied** [Docket No. 90].

21.  Defendant Luis Alfonso Perez-Robles' Motion for Severance of Defendants be **denied** [Docket No. 93].

22.  Defendant Luis Alfonso Perez-Robles' Motion to Suppress Out-of-Court Identification be **denied** [Docket No. 103].

23.  Defendant Guillermo Perez-Chavez's oral motion for disclosure of rough notes is **moot**.

Dated:     December 21, 2009

      s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before January 5, 2010.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.